IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| SUE FAULKNER and <br> NICOLA TIBBETTS, <br> on behalf of themselves <br> and all others similarly <br> situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ACELLA <br> PHARMACEUTICALS, LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 2:22-CV-092-RWS <br> ) Jury Trial Demanded <br> ) <br> ) <br> ) <br> ) <br> ) |

---

**[Proposed] ORDER AND JUDGMENT GRANTING FINAL
APPROVAL OF SETTLEMENT CLASS AND ORDER GRANTING
PETITION FOR ATTORNEYS' FEES AND COSTS**

---

This matter is before the Court on Plaintiffs' Unopposed Motion for Final Approval of Settlement Class, [Dkt. 56], and Plaintiffs' Petition for Attorneys' Fees and Costs, [Dkt. 57]. The Court has carefully considered the terms of the Settlement Agreement, [Dkt. 52-2], the declaration of the Settlement Administrator tasked with administering the Court-approved Notice Plan, [Dkt. 58-1], the declaration submitted by Class Counsel, [Dkt. 56-1; 57-1], and all other evidence, pleadings, and orders in this case. On May 14, 2024, the

Court conducted a Final Approval Hearing and heard presentations from counsel. There were no objections.

For the reasons explained on the record and further addressed below, the Court GRANTS Plaintiffs' motion for final approval, enters judgment with respect to the economic loss claims asserted on a class-wide basis in this case, and orders the Parties and the Settlement Administrator to move forward with the claims process set out in the Settlement Agreement beginning June 1, 2024, according to the terms of the Settlement Agreement. For the reasons explained on the record, the Court also GRANTS Plaintiffs' petition for fees and costs. The Court sets out its additional findings of fact and rulings with respect to each motion below.

**Final Approval of the Proposed Class Action Settlement**

1. The Settlement Agreement dated February 2, 2024, including its exhibits and definitions of words and terms, is incorporated by reference in this Order. [Dkt. 52-2].

2. The Court has jurisdiction over the subject matter of this litigation, the Parties, and all Settlement Class Members.

3. The Court confirms the settlement class definition set out in its February 7, 2024, Order Certifying Settlement Class and Preliminarily Approving Settlement Agreement, [Dkt. 55], as follows:

> All natural persons in the United States for whom a prescription for NP Thyroid® was dispensed between May 12, 2018, and April 30, 2021, whether or not Acella recalled the NP Thyroid.

4. The Court confirms certification of this Settlement Class and finds that, for purposes of settlement, all the relevant requirements of Federal Rule of Civil Procedure 23 are satisfied, as set out in the briefing and further discussed below.

5. The Court confirms the named plaintiffs Sue Faulkner and Nicola Tibbetts as Class Representatives of the Settlement Class. The Court further finds that they adequately represented their class and that their economic loss claims are typical of those of the class.

6. The Court confirms The Block Firm, LLC as Class Counsel and finds that Class Counsel adequately represented the class.

7. The Court confirms KCC Class Action Services, LLC ("KCC") as Claims Administrator.

8. The Court finds that Class Notice was disseminated to members of the Settlement Class by KCC in accordance with the terms set forth in the Settlement Agreement and in compliance with this Court's Preliminary Approval Order, as set out in the Notice of Filing Regarding Compliance with the Provisions of the Class Action Fairness Act, 28 U.S.C. § 1515(b),

and Compliance with the Notice Plan, [Dkt. 58], and the Declaration of Annette Kashkarian (a Director with KCC) Regarding Notice Procedures, [Dkt. 58-1].

9. The Court finds that the foregoing notice constitutes the best notice practicable under the circumstances pursuant to Federal Rule of Civil Procedure 23 and complies with due process. The Court further finds that the notice provided by KCC to the appropriate state and federal officials pursuant to 28 U.S.C. § 1715 satisfied the requirements of that statute.

10. Counsel for the parties and KCC report that they have received no objections to or opt-outs from the proposed Settlement, and the Court has likewise received no objections to or opt-outs from the proposed Settlement.

11. The Court finds that the proposed Settlement is fair, adequate, and reasonable and satisfies the pertinent requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) and that the settlement and notification process complies with Rule 23(e). The Settlement was reached following arms-length negotiations between experienced counsel after approximately 20 months of litigation, including several rounds of motion practice on issues with implications for class certification and

what the parties describe as significant discovery on class certification issues with overlapping application to the merits of the Class's claims. According to the parties, that discovery entailed the production and review of tens of thousands of pages of detailed manufacturing and testing records, and Plaintiffs had substantially completed expert reports from six experts with backgrounds in FDA compliance, pharmaceutical industry practices, and prescriber expectations, among other topics.

12. The Settlement provides tangible benefits for class members, while avoiding the uncertainty, delay, and expense of further litigation. Specifically, eligible Class Members (who have not already received a refund) are entitled to receive reimbursement of their out-of-pocket cost for up to 90 days' supply of NP Thyroid, with a floor of $10 (including for those Class Members with no out-of-pocket expenditures or out-of-pocket expenditures less than $10) and a ceiling of $50, upon submission of proof of purchase or comparable information. The Settlement will not require Class Members to demonstrate the specific lot numbers associated with their prescriptions, which the Parties describe as a complex issue given pharmacy recordkeeping practices investigated during discovery.

Further, as explained on the record, the Court finds it significant that the Settlement does not provide for coupons or vouchers.

13. Based on data obtained from national pharmacies, pharmacy benefits managers, and Acella during discovery, Plaintiffs estimate that the Settlement makes approximately $41,473,889 in reimbursements available to the Class, which is estimated to number approximately 1.2 million individuals. In addition, Acella has agreed to pay for all costs related to administration of the Settlement and Notice Plan and for attorneys' fees and costs up to $5,000,000, as discussed below.

14. In addition to reviewing the parties' submissions, the Court conducted a Fairness Hearing on May 14, 2024, at which the Court heard from the parties and provided an opportunity for Class Members to address the Court if they wished to do so. No Class Members made objections before the hearing or appeared at the hearing to object.

15. Based on the foregoing and the other arguments advanced by the parties, the Court finds that the Settlement is fair, adequate, and reasonable based on all the factors set out in Fed. R. Civ. P. 23(e)(2), and it should be approved.

16. Accordingly, the Court hereby ORDERS as follows:

a. The Settlement is APPROVED. Settlement Administrator KCC may commence administration of the claims process June 1, 2024.

b. The Class claims are DISMISSED with prejudice and the Court hereby enters a final judgment with respect to those claims, except as may be necessary to effectuate the Settlement Agreement.

c. Each and every Class Member, and any person actually or purportedly acting on behalf of any Class Member, are hereby permanently barred and enjoined from commencing, instituting, continuing, or pursing, any Released Claims. This permanent bar and injunction is necessary to protect and effectuate the Settlement Agreement and this Order.

d. After completion of settlement administration as contemplated by the Settlement Agreement, the parties or Settlement Administrator shall provide the Court with an update regarding the claims administration process. As explained on the record, no aspect of this final approval order or the order regarding the fees petition addressed below is contingent on this update, and this Order constitutes a binding final approval order and judgment on the class claims according to the terms set out in the Settlement Agreement.

## Class Counsel's Petition for Attorneys' Fees and Costs

17.     The Court next turns to Class Counsel's Petition for Attorneys' Fees and Costs.

18.     As set out above, Plaintiffs estimate that the Settlement Agreement makes approximately $41,473,889 available to the Settlement Class through the claims process. In addition, through the Settlement Agreement, Acella "agreed to pay up to a total of Five Million Dollars ($5,000,000)," representing "a reasonable and appropriate award of fees and costs in recognition of Class Counsel's successful pursuit of this Class Action." [Dkt. 52-2 § IV]. Class Counsel seeks the amount of $5,000,000 in fees and costs.

19.     As explained below and at the hearing, the Court finds that Class Counsel's request is reasonable and appropriate, applying Eleventh Circuit authority to the evidence in this case, and the Court orders Acella to make the payments for fees and costs as set out in the Settlement Agreement.

20.     The Court bases its ruling primarily on the application of the twelve *Johnson* factors and finds that the requested fees and costs are reasonable in light of the work done and results achieved in this case. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.

1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

21.     *Johnson's* twelve factors are: (1) time and labor, (2) novelty and difficulty of the questions, (3) requisite skill, (4) preclusion of other employment, (5) customary fee, (6) fixed or contingent fee, (7) time limitations, (8) amount involved and results obtained, (9) experience, reputation and ability of attorneys, (10) 'undesirability' of the case, (11) nature and length of professional relationship with client, and (12) award in similar cases. *See generally id.*

22.     *First*, "'the most critical factor in determining the reasonableness of a fee award is the degree of the success obtained'" (*Johnson* factor eight). *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*, No. 1:17-md-02782-RWS, 2022 U.S. Dist. LEXIS 227201, at *68 (N.D. Ga. Nov. 14, 2022) (quoting *In re Oil Spill by the Oil Rig "Deepwater Horizon"*, No. 2179, 2016 U.S. Dist. LEXIS 147378, at *72 (E.D. La. Oct. 25, 2016)). Here, the Settlement Agreement makes approximately $41,473,889 available through the claims process to a Settlement Class of approximately 1,200,000 individuals, with the agreed attorneys' fees paid separately. This Settlement Class includes everyone who purchased NP Thyroid throughout the entire limitations

period regardless of whether the pills they purchased were recalled, regardless of whether the pills tested outside of the applicable USP range, and regardless of whether the Settlement Class member even made out-of-pocket payments. The Settlement Agreement also does not release any separate personal injury or wrongful death claims that Class Members might have against Acella. Given the level of complexity and risk, securing the recovery of cash payments for the economic damages of such a broad range of purchasers without requiring them to release any separate personal injury claims they might have against Acella is an excellent result that supports the fee request.

23. *Second*, *third*, and *fourth*, this case presented a variety of novel and difficult questions that required significant skill to address within the applicable time limitations (*Johnson* factors two, three, and seven).

24. *Fifth*, while Class Counsel pursued this case vigorously, the overall lack of interest from the legal market suggests that others may have considered it an undesirable case (*Johnson* factor ten).

25. *Sixth*, *seventh*, and *eighth*, this case required substantial time and labor from attorneys with significant class action and product liability experience and a good reputation, and it precluded class

10

counsel from taking other work (*Johnson* factors one, four, and nine).

26.   *Ninth*, *tenth*, and *eleventh*, the fee request is supported by the customary fee in this kind of case, the nature of this case as a contingency fee matter, and counsel's relationship with the named plaintiffs (*Johnson* factors five, six, and eleven). Class counsel took this case on a contingency basis with no prior relationship with either named plaintiff and with counsel covering all litigation expenses without litigation financing. According to Class Counsel's estimate, counsel risked approximately $1.23 million in professional fees at counsel's normal hourly rates for business clients (not adjusting for the risk of non-payment or matter type and complexity), and counsel risked approximately $1.42 million in combined fees and costs. Thus, "a rough lodestar 'cross-check,'" shows a multiplier of 3.5 (including costs) or 4.1 (fees only) that falls within the range that "demonstrate[s] a reasonable attorneys' fee.'" *In re Ethicon*, 2022 U.S. Dist. LEXIS 227201, at *90 ("'Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee.'") (citation omitted). These *Johnson* factors support the fee request.

27.   *Finally*, the requested fee is consistent with or below other fee awards in class action cases within the Eleventh Circuit (*Johnson*

factor twelve). In common fund cases, for comparison, courts typically award fees of 20 to 30 percent of the fund, with fees in the 20–25% range being presumptively reasonable. While the Court is not obligated to apply and does not apply a percentage-of-the-fund approach here, the approximately 10.8% fee agreed to by Acella and requested by Class Counsel compared to the overall settlement value falls well below the usual range in common fund cases. This *Johnson* factor therefore supports the requested fees and costs.

28.    In addition to these *Johnson* factors and as explained on the record, the Court finds that the result in the case came after vigorous litigation by both sides resulting in several orders from this Court on merits, class, and discovery issues, and the declaration of Class Counsel describes significant fact and expert discovery and extended negotiations before the parties came to terms. The Court finds that the result in this case with respect to both the class recovery and the agreed amount in fees and costs is the product of arms-length negotiation, and the Court finds that there is no evidence of collusion.

29.    Accordingly, the Court concludes that Class Counsel's fee request is reasonable and grants attorneys' fees and costs in the requested amount of $5,000,000.

## Conclusion

30. For the foregoing reasons, Plaintiffs' Unopposed Motion for Final Approval of Settlement Class and Petition for Attorney's Fees and Costs are GRANTED and the Court enters final judgment with respect to Plaintiffs' class-wide economic loss claims.

31. The Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement and this Order.

SO ORDERED, this 16th day of May, 2024.

_____
THE HONORABLE RICHARD W. STORY
UNITED STATES DISTRICT JUDGE